2022 IL App (3d) 190024-UB

Order filed March 22, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* COMMITMENT OF WARREN C. SNAPP, SR., | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| (The People of the State of Illinois, | ) ) | |
| Petitioner-Appellee, | ) ) | Appeal No. 3-19-0024 Circuit No. 97-CF-2580 |
| v. | ) ) | |
| Warren C. Snapp, Sr., | ) ) ) | Honorable Sarah-Marie Francis Jones, Judge, Presiding. |
| Respondent-Appellant). | ) | |

JUSTICE LYTTON delivered the judgment of the court.
Justices McDade and Schmidt concurred in the judgment.

**ORDER**

¶ 1        *Held*:  Trial court's finding that respondent, who had been committed to the custody of the Department of Corrections since 1999, was still sexually dangerous and conditional release should not be granted was not against the manifest weight of the evidence.

¶ 2        Respondent, Warren C. Snapp Sr., having been found a sexually dangerous person (SDP), filed a *pro se* application alleging recovery under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/9(a) (West 2010)). Following a bench trial, the circuit court found that he remained an SDP. On appeal, respondent argued that the trial court failed to make the requisite finding that it

was substantially probable he would reoffend if not confined, as required by *People v. Masterson*, 207 Ill. 2d 305, 330 (2003). Alternatively, he claimed that the trial court's decision denying his application for recovery was against the manifest weight of the evidence. We found that *Masterson* required an express finding of substantial probability and issued an opinion vacating the trial court's order and remanding the cause for a new hearing on respondent's recovery application.

¶ 3　　　　Respondent appealed to our supreme court, which concluded that, under the post-*Masterson* amended Act, it is no longer necessary for a trial court to make a separate express finding that the respondent is substantially probable to reoffend after determining that the respondent is a sexually dangerous person and remanded to our court for consideration of respondent's alternative argument raised on appeal. *In re Commitment of Snapp*, 2021 IL 126176, ¶ 23. We now affirm the trial court's order denying respondent's application for recovery.

¶ 4　　　　　　　　　　　　　　　　　I. BACKGROUND

¶ 5　　　　In March 1999, respondent was found to be an SDP and was committed to the custody of the Department of Corrections (DOC). He filed his third application for discharge or conditional release in 2010, alleging that he had recovered. 725 ILCS 205/9(a), 10 (West 2010).

¶ 6　　　　Respondent's bench trial commenced on September 11, 2018. Dr. Kristopher Clounch, a clinical psychologist, testified that he evaluated respondent in July 2014 to determine whether he was still an SDP. He interviewed respondent and conducted a risk assessment to determine his likelihood to reoffend. As part of the evaluation, Dr. Clounch also reviewed (1) respondent's prior evaluations, (2) police reports regarding respondent's past offenses, (3) court records for each offense, and (4) respondent's treatment records. Based on his assessment, Dr. Clounch diagnosed respondent with pedophilic disorder, sexually attracted to both females and males, nonexclusive type and concluded that respondent remains an SDP.

¶ 7    Dr. Clounch testified that a significant factor in reaching his conclusion was respondent's sexual offense history. He noted that respondent had (1) sexually abused his younger siblings in his late teens, (2) repeatedly molested his wife's eight-year-old brother while in his 20's, (3) pleaded guilty to three counts of indecent liberties with three different children in 1973 when he was 28 years old, (4) fondled his eight-year-old niece's vagina while on parole for the 1973 conviction, (5) pleaded guilty to aggravated criminal sexual abuse of child in 1992, and (6) kissed a nine-year-old boy and fondled his penis in 1997, which led to charges of aggravated criminal sexual assault and his SDP adjudication in 1999.

¶ 8    Dr. Clounch noted that during the evaluation respondent had "great difficulty" recognizing that his past offenses involved molestation. For example, when discussing the 1973 offenses, respondent told Dr. Clounch that he was "teaching" the boys about sex and that he was "in love" with one of the boys. In addition, respondent explained that he fondled his niece's vagina because he was upset with his wife and the victim "looked like her mother" and " had a pussy like her mother." Dr. Clounch opined that respondent's disconnected reasoning increased his risk of reoffending. Dr. Clounch also testified that individuals suffering from pedophilic disorder, like respondent, "will continue to have that sexual arousal to children for the remainder of their life." He stated that, in general, their pedophilic desires and thoughts do not dissipate with time.

¶ 9    Dr. Clounch explained that he utilized two risk assessment tools to evaluate respondent: the Static-99R and the Stable 2007. Respondent scored in the "average" category for risk of reoffending on the Static-99R scale. Dr. Clounch estimated that the Static-99R assessment undervalued respondent's risk because it did not account for his failure to progress in treatment and his distorted beliefs regarding past offenses. The Stable 2007 assessment placed respondent in the "high risk" category. The combined results of both tests indicated that respondent fell into the

"well above average" category for risk of reoffending. Dr. Clounch testified "individuals that are in the well above average category have been found to reoffend at a rate of three to four times the rate of the average sex offender."

¶ 10    In addition to the assessment tools, Dr. Clounch identified several other factors that increased respondent's risk of reoffending: (1) his high degree of sexual preoccupation; (2) his large number of victims; and (3) his long history of offending. Respondent's preference for children and his emotional attachment to his victims were other concerning factors that significantly increased his risk to reoffend.

¶ 11    Dr. Clounch acknowledged that there were potential factors that could reduce an individual's risk of reoffending, such as advanced age, significant health problems, and making significant progress in a sex offender treatment program. Dr. Clounch noted that respondent's age resulted in a risk reduction, but he had no relevant health problems and, after many years in treatment, had only progressed to the second phase of a four-phase treatment program. Based on all the assessment tools and risk factors, Dr. Clounch concluded that respondent was "substantially probable to reoffend if not confined" and "still meets [the] criteria to be found a sexually dangerous person."

¶ 12    On cross-examination, Dr. Clounch testified that respondent has a high risk of reoffending even though he scored a "2" on the Static-99R assessment. He based his conclusion on the Stable 2007 assessment tool that placed respondent in the high risk category, as well as the other dynamic factors at work in respondent's case. He emphasized that risk assessment manuals developed in 2014 indicated that a sex offender's scores from both the Static-99R and Stable 2007 tests should be combined for an overall category of risk.

4

¶ 13    Respondent testified in response and denied that he was guilty of the 1992 offenses, as well as the 1997 offenses. He admitted to the earlier offenses but claimed he committed no other sexual abuse crimes since molesting his niece in 1978. He agreed that there was no cure for pedophilia and noted that he had to learn interventions to avoid reoffending. He also admitted that he was unable to proceed to more advanced therapy because he refused to acknowledge some of his past offenses. However, he testified that he believed he would not reoffend because he understood the pain he had caused his victims.

¶ 14    On cross-examination, respondent admitted that prison officials have repeatedly expressed concern about him befriending younger inmates who looked like boys and had the emotional maturity of young children. Dr. Clounch's reports, which were admitted into evidence, also noted that prison officials had expressed concerns for years and had filed reports alleging inappropriate sexual contact with younger inmates.

¶ 15    Respondent did not call an expert witness to testify on his behalf.

¶ 16    At the conclusion of the proceedings, the trial court denied respondent application for recovery. The court determined that respondent was "still a sexually dangerous person and in need of confinement" and remanded him to the custody of the DOC.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, respondent challenges the trial court's determination that he remains an SDP and is substantially probable to reoffend if released. To succeed on this challenge, respondent must show that the trial court's finding that he is still sexually dangerous is against the manifest weight of the evidence. *People v. Donath*, 2013 IL App (3d) 120251, ¶ 38. To that end, he must show that "an opposite conclusion is clearly apparent." *Id.*

¶ 19    Under the Sexually Dangerous Persons Act, an individual is a "sexually dangerous person" if her or she "(1) suffered from a mental disorder existing for at least one year prior to the filing of the petition, (2) demonstrated criminal propensities to the commission of sexual offenses, and (3) demonstrated propensities toward acts of sexual assault or sexual molestation of children." *In re Commitment of Snapp*, 2021 IL 126176, ¶ 21 (citing 725 ILCS 205/1.01 (West 2014)). The Act further provides that " 'criminal propensities to the commission of sex offenses' means that it is substantially probable that the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." 725 ILCS 205/4.05 (West 2020). In recovery proceedings, "[t]he State has the burden of proving by clear and convincing evidence that the applicant is still a sexual dangerous person." *Id.* § 9(b).

¶ 20    Here, Dr. Clounch testified that respondent is substantially probable to reoffend if not confined. That conclusion was based on considerable evidence, including respondent's long history of sexually abuse of young children. Dr. Clounch noted that respondent has a pedophilic disorder and that symptoms of pedophilia do not dissipate with time. He further testified that respondent's combined risk assessment scores placed him in the "well above average" category for risk of reoffending and that his records reveal no protective factors that meaningfully reduced the risk. As examples, Dr. Clounch noted that respondent refused to accept responsibility for the acts of sexual abuse he committed in 1992 and 1997 and he continued to have distorted thoughts about his victims.

¶ 21    Moreover, respondent's own testimony corroborated Dr. Clounch's professional conclusions. In particular, respondent acknowledged that he is a pedophile and that it is a lifelong disorder that cannot be cured. Respondent claimed that he had to learn to control his behavior but admitted that he only attended a limited number of therapy sessions and had been unable to make

6

significant progress due, in part, to his refusal to admit to past offenses. Respondent's testimony also confirmed that he still has irrational thoughts and makes excuses for his inappropriate sexual conduct.

¶ 22     Given this testimony, it is not clearly apparent that respondent is no longer sexually dangerous. The trial court's determination that respondent is still an SDP in need of confinement is not against the manifest weight of the evidence.

¶ 23                                    III. CONCLUSION

¶ 24     The judgment of the circuit court of Will County denying respondent's application for recovery is affirmed.

¶ 25     Affirmed.